IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SAMUEL JEBODA and ) <br> ABOSEDE KAMSON ) <br>     Plaintiffs, ) <br> v. ) <br> ) <br> AJ DELL'OMO SURETY AND ) <br> IMMIGRATION BOND SERVICES, ) <br>     Defendant. ) <br>                                  ) | CIVIL ACTION FILE NO. <br> _____ <br><br> JURY TRIAL DEMANDED |

## **COMPLAINT**

COMES NOW, Plaintiffs Samuel Jeboda and Abosede Kamson, and files this Complaint and hereby avers as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs Samuel Jeboda and Abosede Kamson are residents of the state of Georgia.

2.

Defendant AJ Dell'Omo Surety and Immigration Bond Services is a New Jersey company having its principal place of business in the state of New Jersey and can be served at 3455 NJ-66 Suite 1 2, Neptune City, NJ 07753.

1

3.

Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiffs are both Georgia residents, and Defendant is a resident of New Jersey with principal place of business in New Jersey. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

## STATEMENT OF RELEVANT FACTS

4.

Defendant offers surety and immigration bonding services in Neptune, New Jersey and across the United States. Defendant services a wide variety of surety bonds, which include, but are not limited to, contract bonds, court bonds, permit bonds, and public official bonds.

5.

Defendant markets itself as a member of the Expert Bail Network and a trusted business entity, cognizant in all phases of the court system relating to bail bonds. Despite being based in New Jersey, Defendant markets itself as having a national network and the ability to provide bail and court information specific to an individual's locality.

6.

On December 21, 2018, Plaintiff Samuel Jeboda was detained by Immigration and Custom Enforcement ("ICE") in New Jersey. On March 21, 2019, Jeboda was granted bail at $25,000.00 U.S. dollars.

7.

Plaintiff Adebose Kamson, the aunt of Plaintiff Jeboda, sought the services of Defendant to assist as the most viable bail bond company. On May 6, 2019, after several conversations and negotiations, Plaintiff Kamson and Jeboda agreed to enter into a written contract with Defendant.

8.

Under the terms of the contract, Plaintiff Jeboda was to electronically transfer $18,000.00 U.S. dollars to Defendant in exchange for the timely payment of $25,000.00 U.S. dollars to the court as payment for his bail. Once the $25,000.00 bail was received, Plaintiff Jeboda was to be released from custody.

9.

On May 9, 2019, Plaintiff Jeboda submitted a signed and notarized copy of the promissory note to Defendant via email.

10.

On May 10, 2019, Plaintiff Jeboda sent Defendant $18,000.00 U.S. dollars through an electronic wire transfer.

11.

After receiving the $18,000.00 wire transfer on May 10, 2019, Defendant failed make the subsequent $25,000.00 bail bond payment to the court in order to have Plaintiff Jeboda released from custody.

12.

Defendant claimed that the delay was due to the enforcement of rules and regulations by ICE which limited the total number of bails paid to one per day. Defendant did not provide Plaintiffs with any evidence to support this claim.

13.

From May 10, 2019 to May 28, 2019, Plaintiffs repeatedly requested that Defendant pay Plaintiff Jeboda's bail bond pursuant to the terms of their contract, and repeatedly inquired into the delay. Plaintiffs informed Defendant of the financial and emotional turmoil the prolonged detention was causing.

14.

Defendant never informed Plaintiffs during this period that they were unable to post the bail.

15.

On May 28, 2019, Plaintiff Jeboda appeared at a second hearing during which his bail was reduced from $25,000.00 to $10,000.00 U.S. dollars. Due to Defendant's failure to pay the original bond, Plaintiffs decided it would be best if

Plaintiff Kamson paid the bail herself. Thus, upon reduction of the bail, Plaintiffs contacted Defendant to inform them of the bail reduction and to request a refund of the $18,000.00.

16.

Defendant confirmed that the refund would be processed as soon as possible.

17.

On May 30, 2019, Defendant informed Plaintiff that a refund of $18,000.00 U.S. dollars would be issued and provided Plaintiff with instructions on how to post the now reduced bail.

18.

On June 4, 2019, Defendant provided documents alleged to be a receipt for the wire transfer refund of $18,000.00.

19.

On June 6, 2019, Plaintiff Kamson had still not received the refund and so visited the office of Defendant. Upon arrival, Defendant purported to make a phone call to Wells Fargo bank where an associate claimed that the refund to Plaintiff would not be completed until June 10, 2019.

20.

In order to facilitate Plaintiff Jeboda's prompt removal from custody and mitigate any additional harm caused by the prolonged incarceration, Plaintiff

Kamson was forced to make additional financial arrangements to secure the $10,000.00 necessary to pay the bail bond while the refund from Defendant was pending.

21.

Upon release from ICE custody, Defendant informed Plaintiffs that they would investigate the cause for the failure of the refund. Defendant indicated that the refund and investigation would be completed no later than June 24, 2019.

22.

On June 10, 2019, Defendant's agent informed Plaintiffs that a standard wire transfer had been initiated and that Plaintiff would be sent a copy of the trace code via email. This trace code was never sent to Plaintiffs and the refund was never received by Plaintiffs.

23.

On or about June 24, 2019, Plaintiff Kamson was informed by her bank that no wire transfer from Defendant had been initiated. After her conversation with her bank, Plaintiff Kamson had reason to believe that the wire transfer receipt provided by Defendant's agent on June 6, 2019 was a fraudulent document.

24.

On June 24, 2019 Plaintiffs made several attempts to contact Defendant but were unsuccessful. On July 10, 2019, a receptionist from Defendant's office contacted Plaintiffs to inform them that the Defendant was working on getting the full refund sent to Plaintiffs.

25.

Plaintiffs have not had any further communication with Defendant since July 10, 2019, and to date have not received a refund of the $18,000.00 they paid to Defendant.

## CAUSES OF ACTION

### Count I: Breach of Contract

26.

Plaintiffs incorporate paragraphs 1 through 25 of Complaint as set forth herein.

27.

Defendant breached their contract with Plaintiffs by failing to post $25,000.00 bail for the release of Plaintiff Jeboda from ICE custody.

28.

Defendant's breach is the proximate cause of monetary and emotional damages incurred by Plaintiffs.

29.

As a result of the breach, Plaintiffs have suffered damages. Plaintiff Jeboda remained in custody for longer than necessary which caused emotional and mental anguish. Plaintiff Kamson was forced to secure an additional $10,000.00 in order to pay the bail for Plaintiff Jeboda. In addition, both Plaintiffs lost the $18,000.00 originally paid to Defendant per the terms of their contract.

30.

Plaintiffs are entitled to recover damages in the form of compensatory and punitive damages, expenses of litigation, and attorney's fees from Defendant for their gross breach of contract.

**Count II: Fraud**

31.

Plaintiffs incorporate paragraphs 1 through 30 of Complaint as set forth herein.

32.

Defendant affirmatively undertook to pay Plaintiff's bail promptly after receipt of the agreed upon $18,000.00, thereby undertaking and assuming the duty

to make full, unambiguous and nondeceptive disclosures concerning their ability to make necessary bail payments to ensure Plaintiff's release from custody.

33.

Defendant's failure to disclose their ability and willingness to pay Plaintiff's bail in a timely manner is materially misleading and deceptive and constitutes actual and constructive fraud.

34.

In reliance upon Defendant's false statements regarding the reasons for the delay of payment of his bond, Plaintiff's remained incarcerated and forfeited the option to find a new bail bonds company to post his bail. As a result, Plaintiff suffered prolonged incarceration and increased financial expenses.

35.

From May 10 to May 28, 2019, Plaintiffs made several documented inquiries as to Defendant's ability to pay the bail bond necessary to secure Plaintiff Jeboda's release from custody. From the day Plaintiffs paid $18,000.00 to the day Plaintiffs requested a refund, the Defendant never indicated that they were unable or unwilling to post bail for Plaintiff Jeboda. They never indicated that Plaintiff Jeboda would have to remain in custody for a prolonged period of time; and they never indicated that Plaintiff's release was not forthcoming.

36.

The Defendant has misrepresented their ability to provide their marketed service of bail bonds, and deceptively and unfairly misrepresented the standard of their financial services.

37.

The Defendant has made misrepresentations and have omitted information regarding the ICE bail bond protocols, and have thereby engaged in conduct that creates a likelihood of confusion and misunderstanding.

38.

Plaintiffs are entitled to recover damages from Defendant.

39.

Defendant further deceived Plaintiffs by misrepresentations, omissions, and falsified documents regarding the refund payment Plaintiffs never received. Defendant never refunded Plaintiffs their $18,000.00 despite fraudulent claims that they would.

40.

Defendant acted with the intent to induce Plaintiff to use their services; they benefitted from their misrepresentations, omissions and falsified documents.

41.

Defendant actions have resulted in damages to Plaintiffs Jeboda and Kamson. Plaintiffs are entitled to relief.

### Count III: Attorney's Fees

42.

Plaintiffs incorporate paragraphs 1 through 41 of Complaint as set forth herein.

43.

Defendant have acted in bad faith and caused Plaintiffs excessive and unnecessary costs and expenses. Accordingly, Plaintiffs are entitled to expenses of litigation and attorney's fees pursuant to O.C.G.A. § 13-6-11.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Samuel Jeboda and Abosede Kamson pray as follows:

a) That process issue and that the Defendant be served as required by law;

b) That judgment be entered against Defendant for damages including but not limited to special damages, general damages, and punitive damages in an amount in excess of $100,000.00;

c) That Defendant pays for Plaintiffs' expenses of litigation, including reasonable attorney fees;

d) That Plaintiffs be allowed to amend their complaint to avoid manifest injustice

e) That a trial by jury be held; and

f) That Plaintiffs have such further relief as the Court deems just and appropriate under the circumstances.

This __4th__ day of __March__, 2021

                                                Respectfully submitted,
                                                /s/ *William A. Tiku*
                                                William A. Tiku
                                                Georgia Bar No. 142256
                                                Tiku & Associates, PC
                                                2470 Windy Hill Ste 116
                                                Marietta, GA 30067
                                                Tel: 770-272-9470
                                                Fax: 770-272-9471